WITZEL *vs.* CHAPIN.

*In the matter of the Estate of* WILLIAM WITZEL, *deceased.*

THE intestate having voluntarily made a deposit of his own moneys in a savings bank, in his own name, " in trust" for his sister, and at the time of his decease, there being a portion of the fund still remaining deposited in that manner, *Held*, that there was sufficient proof of a valid gift or trust, which it was the duty of the administrator who had collected the funds, to carry out in favor of the *cestui que trust.*

A trust may be created by a mere declaration, without the knowledge of the *cestui que trust*, and notwithstanding a power to revoke is impliedly retained, provided the power be not exercised.

ALBERT MATHEWS, *for Claimant.*

I. The deposit of the money in the bank, in the name of the intestate as trustee, was a valid executed *gift inter vivos*, of the money to Ann S. Witzel, the claimant. (*Grangiac* vs. *Arden*, 10 *Johns. R.*, 293 ; *Runyan* vs. *Messereau*, 11 *Johns.* 534; *Gardner* vs. *Gardner*, 7 *Paige*, 112 ; *Gardner* vs. *Gardner*, 22 *Wend.*, 526 ; *Minchin* vs. *Merrill*, 2 *Edw. V. Ch. R.*, 333 ; *Astreen* vs. *Flanagan*, 3 *Ibid.*, 279 ; *Howell* vs. *Cleaver*, 2 *Brown's Cases*, 500–502.)

No further act remained to be done by the intestate. The entry in the book of the bank was the act of the intestate, and was a complete instrument of gift.

II. At least, such deposit was valid as an executed *trust* or *use* for the sole benefit of Ann S. Witzel. (*Minchin* vs. *Merrill*, 2 *Edw. V. C. R.*, 333; *Ex-parte Dubost*, 18 *Ves. R.*, 140; *George* vs. *Howard*, 7 *Price's R.*, 646.)

This gift or use being for the benefit of Ann Witzel, no formal acceptance is necessary—the law presumes it.

III. The fund was beyond the control of the deceased except as a trustee, and his administrator has no right as such, to distribute the fund among the next of kin.

F. H. B. BRYAN, *for Contestants.*

I. It is one of the elements of a trust that the *cestui que trust* has power to call on the trustee to execute the trust. (2 *Story's Equity. Trusts.*)

II. In this case, Ann Witzel could not, during the life-time of deceased, have made any such demand upon him—nothing vested in her. The deceased held in his hands the book which showed a mere deposit of his own funds in his own name, as trustee. But this was the case of a self-constituted trustee who had never communicated to any person his intentions.

III. It is highly probable that the decedent contemplated some provision for Ann Witzel, by making this investment, as he contemplated making a will, but so long as she knew nothing of it, and nothing had ever vested in her, it was a mere declaration of an intention, which he died without executing.

No trust was ever fixed.

Courts will not enforce a mere gratuitous gift on a mere moral obligation.

If a mere executory trust is created, courts of law will not enforce it. (2 *Story's Equity*, 301.)

The present is a mere voluntary trust.

IV. Nor does even a moral obligation enure to create this trust; the deceased was never indebted to Ann Witzel.

A trust being an equitable right or interest in property real or personal distinct from the legal owner; (2 *Story's Equity*, *p.* 962,) nothing, according to this rule, could ever have vested in Ann Witzel, for she never had any interest in this fund distinct from that of the legal owner, the deceased.

The fund itself, and the evidence of the fund, the bank book, always remained with the deceased.

The deceased had always the legal " title ;" it was invested in his name. The bank was bound to pay him the money at any time he might demand it.

V. The proper test to apply to this case is ; could Ann Witzel ever have called on the deceased in his lifetime to execute this trust ? If she could not, then by his death she can acquire no more extended right.

We cannot shut our eyes to the fact that by the decease of William Witzel without a will, Ann, his sister, the alleged *cestui que trust*, became possessed of his property, while the whole course of his conduct (*vide* evidence on the contested administration in this case before the Surrogate) in his lifetime, showed that if he had made a will it would not have taken that course.

He had, no doubt, an intention to make his will, and the money now in dispute would probably in such case have been the sole provision for his sister Ann had he ever declared the trust.

VI. The bank book shows that the deceased used the fund as his own, drew it out and expended it. This is evidence by his own acts, that he did not consider it vested.

THE SURROGATE.—William Witzel on the 25th day of June, 1849, deposited in the Greenwich Savings bank, the sum of five hundred dollars, and on the 3d of March, 1853, withdrew four hundred and ninety-five dollars—on the 27th of

the succeeding June, he deposited three hundred dollars. The interest was regularly made up on the first days of January and July, in each year, entered in the book and subsequently withdrawn by the depositor. The deposits were made on account of "William Witzel, in trust for Ann Witzel," as expressed in these words on the face of the bank book. He having died, and his property now being in course of distribution, Ann Witzel claims the amount due from the savings-bank as belonging to her, and relies upon the savings-bank book as evidence of her title. It is agreed that the moneys deposited were the property of the depositor up to the time they were lodged in the bank, and that the claimant was ignorant during the intestate's lifetime that such deposit had been made. It makes no difference that the claimant is one of the next of kin of the intestate, and takes one third of the surplus of his personal estate. The single question is whether the facts stated show a valid gift or trust, which the claimant can now enforce against the representative of the donor or trustee.

The want of knowledge of the existence of the trust on the part of the *cestui que trust*, is no ground of objection against its validity. Nor is the mode of its creation material, provided we can see the elements essential to a legal or equitable right. There would seem to be no reason, in the nature of things, why a trust cannot be created by a mere declaration, the transfer, change or mutation of possession being effected by the change of the character in which the property is held. There can be no doubt in this case that there was a delivery of possession—the funds were deposited in the bank, and ceased to be the intestate's property—his individual possession terminated, and although it is true that he still retained the evidence of the trust, and the control over the deposit, it was in the new character of trustee. Nor had the transaction been conducted with entire privacy, for although the book was retained in his own custody, the deposit in trust was recorded on the books of the institution. It was not an act resting merely in intention, but was consummated

by a disposition and a recognition in writing of the trust. In *Neilson* vs. *Blight*, 1 *Johns. Cas.*, 209, the Supreme Court of this State, held it as a maxim that when a trust is created in any manner, even without the knowledge of the *cestui que trust*, he may affirm it and enforce the trust. The same doctrine was held in *Weston* vs. *Barker*, 12 *Johns. R.*, 276, and received the sanction of Chancellor Kent, in *Cumberland* vs. *Codrington*, 3 *Johns. C. R.*, 261, and in *Shepherd* vs. *McEvers*, 4 *John. C. R.*, 138. Nor is it necessary there should be any consideration to support the trust if it be explicitly declared. A declaration of trust is considered in a court of equity as equivalent to a transfer of the legal interest in a court of law, and if the transaction by which the trust is created is complete, it will not be disturbed for want of consideration. (*Collinson* vs. *Pattrick*, 2 *Keen*, 134.) There has been some discussion as to this class of voluntary trusts without pecuniary consideration, how far they are capable of revocation, before they come to the knowledge of the beneficiaries, (*Story's Eq. Juris.*, § 1045,) but where they have not been revoked by the act of the donor or trustee, but have been allowed to remain till after his death, and the fund is then found in such a condition as not to need the aid of equity to recover possession, there would seem to be no good reason why the trust should not stand. In *Thorpe* vs. *Owen*, 5 *Beavan R.*, 224, an executor invested the estate of his testator together with a thousand pounds of his own funds, and afterwards treated and admitted the aggregate investment, as held in trust for the legatees, who were his own children, and on his decease the fund was found so mixed. It was held that a trust had been declared of the thousand pounds in favor of the executor's children, and his executors were decreed to pay accordingly. In *Gaskell* vs. *Gaskell*, 2 *Yo. & Jer.*, 502, where the decedent in his lifetime had directed his bankers to transfer certain funds standing in his name, to the account of himself and other persons as trustees for his wife and son, there was evidence that this had been done to avoid the legacy duty, and the court considered the appropriations as "not

binding," having been made " with a fraudulent intent."
The element of fraud in this case, for the purpose of escaping
the legacy duty, affects the authority as to the general prin-
ciple free from that element. In *Wheatley* vs. *Purr*, 1 *Keen*,
*R.*, 551, a sum of £2,000 was directed by H. O. to be carried
by her bankers to an account in the joint names of herself as
trustee for her children, and the children. A note was taken
in her name as trustee, and the transfer was made to her
name alone in trust for the children; her executors having,
after her death, received the amount from the bankers, the
court held that the transaction amounted to a complete de-
claration of trust, and that the executors as to the funds so
received were trustees for the children. In *Stapleton* vs.
*Stapleton*, 14 *Simon's R.*, 186, a partner in a bank opened an
account in the name of his wife for the education of his chil-
dren, naming them, and a receipt was drawn accordingly.
The decision was that under the circumstances a complete
and irrevocable declaration of trust had been made in favor
of the children.

The class of deposits in savings institutions, of which the
one in question in the present case is an example, is of fre-
quent occurrence. This is a favorite mode of making trusts,
and yet they are not ordinarily considered as irrevocable.
The withdrawal by the intestate of a large portion of the de-
posit he made in trust for his sister, and of the interest as it
accrued semi-annually, indicates that he did not treat the trust
as connected with the deposit, to be irrevocable. Justice
Story lays down the rule that " where a trust is created
for the benefit of a third person, although without his know-
ledge, he may afterwards affirm it and enforce the execution
of it in his own favor, at least if it has not in the intermedi-
ate time, been revoked by the person who created the trust."
(*Eq. Jurisp.*, § 972, 1045.) The doctrine, even in relation to
assignments for the benefit of creditors, is, according to the
English rule, that the assignment is revocable by the debtor
unless the creditors have assented and given notice to the
assignee, but by the American rule the assent of creditors is

assumed, unless the contrary is shown. (*Story's Eq. Jurisp.*, 1036, *a. b.*) I do not think that the mere existence of the power to revoke or recall the deposit, is sufficient to invalidate the trust, if that power has not been exercised. The continuance of any portion of the deposit in trust is evidence of a continuance *pro tanto*, of the original intention, and the intestate having died, leaving the trust unrevoked as to a certain sum, the rights of the *cestui que trust* then became fixed. It is not necessary to declare generally that deposits of this character are always conclusive evidence of a trust; there may be circumstances connected with particular cases, rebutting the presumption flowing from the deposit, and showing that a trust was not intended. Want of knowledge on the part of the *cestui que trust*, and the fact that there was no pecuniary consideration, are not enough to destroy the presumption raised by the deposit in trust. There must be something more—some facts inconsistent with the idea that a gift was intended. How far the rights of creditors may be legally affected by voluntary trusts, is a question which may be raised at all times in respect even to formal declarations and conveyances in trust, and executed gifts, and of course in respect to deposits of this character. There are no creditors intervening in the settlement of this estate, and the validity of the deposit cannot be contested on that ground. . I am of the opinion, therefore, that the sum remaining on deposit to the credit of the intestate in trust for his sister, at the time of his decease, together with all the subsequent accumulations of interest, should be paid over to her by the administrator.