LUCINDA E. LIBBY, In Equity, *vs.* CLARENCE E. FROST, and others.

Somerset.    Opinion December 15, 1903.

*Trusts*, Acceptance,—Right of election by cestui.    *Waiver.*    *Estoppel.*

Where a beneficiary has a cestui que interest in a certain lot of land and consents to its exchange for another lot, he has the option to charge either lot with the trust; and having elected to look to the latter one therefor, he thereby waives and releases his claim to the former.    *Held;* that having made his election with full knowledge of the facts, he is bound by it and is estopped to assert a claim upon the former lot.

To perfect a trust, it must be accepted by the cestui que trust, when knowledge of its existence is received by the beneficiary.    In absence of evidence to the contrary acceptance is presumed where it is for the benefit of the cestui, but this presumption may be overcome.

*Held;* that the plaintiff not only did not accept the trust, in this case, but repudiated it.

On report.    Bill in equity charging a trust.    Dismissed.

Bill in equity, in which the plaintiff charged that a trust in her favor existed upon a certain parcel of land known as the Lancey lot, in Pittsfield, Somerset County, the legal title to which was held by the defendant Frost.

The allegation of the trust and the plaintiff's prayer in her bill are as follows:—

"But this complainant says that the trust created in said real estate by her said father, Samson Hart on Dec. 3, 1888, in her favor, the payment of which was made a charge upon said real estate, and duly recorded on Feby. 1, 1889, as hereinbefore stated, was made by her said father in part performance of the parental duty he owed to her, his only child and daughter, upon valid consideration; and, upon

the due execution, delivery, and recording of the same, became in her a vested right of which all persons were charged with due notice; and that said vested right could not afterwards be discharged, or annulled, or in any manner affected, by any act of her said father, if, indeed, he designed or intended to discharge or annul it, which she by no means admits, but denies; nor could the same be discharged or destroyed by any act of said Bickford, or of said Walkers, or of said defendant, Frost; all of whom had full notice and knowledge of said trust, and of her vested right thereunder and thereto.

"She therefore respectfully prays that said Clarence E. Frost may be required to make full and specific answer upon his oath to all the allegations in this bill of complaint, so far as his knowledge, information and belief may enable him to answer the same; that said trust may, by the decree of this court, be declared, and said real estate in the hands of the said defendants be charged therewith; that the said defendants be ordered and required by said decree to pay to said complainant said sum of six hundred dollars and the interest due thereon since said Sept. 28, 1898, within such time as the court shall order; and, that in default thereof, so much of said real estate may be sold at public auction by the sheriff of the county, or by a master in chancery to be appointed by said court, as will be sufficient to raise and satisfy said sum and interest, or that said complainant may have such further, or such other relief as to the court shall seem equitable, adequate, proper and just."

*D. D. Stewart,* for plaintiff.

*J. W. Manson,* for defendants.

SITTING: WISWELL, C. J., WHITEHOUSE, STROUT, SAVAGE, POWERS, SPEAR, JJ.

STROUT, J. The plaintiff is the child and only living heir of Samson Hart and his wife Hannah Hart. Samson died June 28, 1898, and Hannah died November 3, 1880. In August, 1881, Samson married Mary Ann Bickford, a widow with two children. December 3, 1888, Samson Hart held the legal title to four parcels of land, one of which was conveyed to him by Isaac H. Lancey,

April 19, 1886, hereafter to be designated as the Lancey lot. On December 3, 1888, he conveyed all these parcels of land to Eugene Bickford, a son of his second wife. The consideration for the deed was the bond of Bickford to maintain Samson and his wife for life, pay their funeral expenses, erect grave stones, and pay Samson twenty dollars a year, if he required, and his wife ten dollars a year after decease of Samson. The bond contained other provisions not material here. This bond was secured by mortgage from Bickford to Samson, of all the land conveyed to Bickford. The condition in the mortgage, in addition to securing the bond, provided that Bickford "should pay Lucinda Libby (this plaintiff) six hundred dollars in three months after said Hart's decease."

In this bill plaintiff claims that this provision created a trust in her favor, which is charged upon the lands mortgaged. She seeks only to have it charged upon the Lancey lot, and makes no claim upon the other three lots. The defendant Frost now holds the title to the Lancey lot.

January 15, 1890, Bickford exchanged the Lancey lot with Cora E. Walker for a lot of hers. Both lots being regarded of equal value, the exchange was even. It was effected by deed from Bickford to Walker of the Lancey lot, and a deed from Walker to him of what will hereafter be called the Walker lot. Samson Hart and his wife at the same time released to Walker their interest in the Lancey lot under the Bickford mortgage, and took a mortgage from Bickford on the Walker lot to secure the performance of his bond for maintenance.

February 28, 1890, this plaintiff brought a bill in equity against Samson Hart, Angie A. Grant, the daughter of his second wife, and Eugene Bickford, brother to Angie. Samson in January, 1888, had conveyed to Angie Grant a lot of land known as the Heagan lot. In her bill she claimed that all five parcels of land were purchased with money of her mother, Hannah, and that her father held them all in trust for Hannah, and upon her death, in trust for this plaintiff. She alleged in her bill that Samson and Bickford had exchanged the Lancey lot for the Walker lot; that the exchange was "an even one," and that the trust in her favor "instantly attached" to the Walker

lot. In her prayer she asked that Samson and Bickford "may be adjudged and declared . . . . to hold the Harvey Robinson lot, the Miller Richardson lot, the McMaster and Nelson lot, and the Walker house and lot, in trust" for her, and that they be required to convey the same to her. That suit was tried before Judge WALTON, as referee, and culminated in a final decree of the court.

If she had a cestui que trust interest in the Lancey lot, when it was exchanged for the Walker lot, she had the option to charge the Lancey lot or the Walker lot with the trust. · She elected to look to the Walker lot, of the value of about two thousand dollars, and thereby waived and released her claim on the Lancey lot. Having made her election, with full knowledge of the facts, she is bound by it, and is estopped to assert a claim upon the Lancey lot. Perry on Trusts, §§ 835 & 836; *Oliver* v. *Piatt*, 3 How. 401; *Buford* v. *Adair*, 43 W. Va. 214; *May* v. *LeClaire*, 11 Wall. 236; *Proctor* v. *Rand*, 94 Maine, 313. She cannot now repudiate that election and revive her claim against the Lancey lot. Neither of these defendants ever had any interest in the Walker lot, nor does the plaintiff proceed against it in this bill. It follows that the bill cannot be sustained.

Although these considerations dispose of the present suit, it may be of service to examine another question that may arise, as to any claim upon the Walker lot. Whether the provision in the condition clause of Bickford's mortgage to Samson Hart, was sufficient to create a trust for this plaintiff chargeable upon all the four lots in that mortgage, which admits of doubt, it is not necessary to consider. It is well settled, that to perfect such a trust, it must be accepted by the cestui que trust, when knowlege of its existence is received by the beneficiary. In the absence of evidence to the contrary, acceptance is presumed, where it is for the benefit of the cestui, but this presumption may be overcome. Perry on Trusts, § 98; *Moses* v. *Murgatroyd*, 1 Johns. Ch. 119, 7 Am. Dec. 478; *Shepherd* v. *McEvers*, 4 Johns. Ch. 136, 8 Am. Dec. 561; *Hosford* v. *Merwin*, 5 Barb. 51; *Wetzel* v. *Chapin*, 3 Bradf. 391.

It is very clear in this case that the plaintiff not only did not accept the trust as to the six hundred dollars, but repudiated it. In her

first bill in equity she claims that all the lands in which her father Samson held the legal title, belonged in equity to her mother, and that as her sole heir she was entitled to the entire estate. If that claim was true in fact, her father could not charge any trust upon the land. Her claim of the entire title was absolutely inconsistent with any trust for six hundred dollars charged upon the same land. Such claim deliberately made and insisted upon on the trial of that case was a full renunciation of the trust now claimed, and ended her right thereto. It is too late, now, for her to recall that renunciation, and accept the alleged trust of six hundred dollars. In that suit, she obtained the Heagan place, and as to all the other lands the award of the referee and decree of this court, were against her.

*Bill dismissed with costs.*