Argued April 14, modified May 19, 1914.

# BETTENCOURT *v.* BETTENCOURT.

(142 Pac. 326.)

**Account—Actions—Evidence—Weight and Sufficiency.**

1. In a suit for accounting for money due plaintiff under a transaction whereby a farm of plaintiff and defendant had been exchanged for real property in Portland, evidence *held* to show that, in order to prevail on plaintiff and his wife to execute the deed of the farm, defendant agreed that, when the exchange should be made, the plaintiff should go to Portland and defendant would settle with plaintiff and pay him what he should be entitled to receive on account of his investment and work on the farm and the personal property that was conveyed in making the exchange.

**Account—Actions—Evidence—Weight and Sufficiency.**

2. In a suit for accounting arising from an exchange of a farm owned by plaintiff and defendant for city real property, the title to which defendant took in his name, evidence *held* to show that plaintiff was entitled to receive from defendant $4,000.

**Trusts—Following Trust Property—Election.**

3. When a trustee has violated the trust by purchasing property with trust funds and taking title in his own name, the beneficiary may elect either to fasten the trust on the purchased property or to proceed against the trustee personally, and, when he makes an election, it is binding and cannot be revoked.

> [As to right to follow trust fund, see note in 40 Am. St. Rep. 608.]

**Trusts—Following Trust Property—Election.**

4. When a beneficiary, with knowledge of the facts, elects to proceed against a trustee personally, he waives the right to have the trust impressed on property purchased with trust funds, and a court cannot decree that the property so purchased be sold to satisfy the amount due beneficiary.

**Trusts—Constructive Trusts—Purchase With Funds of Another.**

5. When the consideration paid for land proceeds from two persons and a conveyance is taken in the name of one only, a trust results in favor of the other in proportion to the amount paid by him.

> [As to constructive trusts, what they are and when created, see note in 51 Am. Dec. 751.]

From Multnomah: HENRY E. McGINN, Judge.

This is a suit by A. Bettencourt against Enos Bettencourt for an accounting. From a decree in favor of defendant, plaintiff appeals. The facts are fully stated in the opinion of the court.    MODIFIED.

For appellant there was a brief over the names of *Mr. Martin L. Pipes, Mr. George A. Pipes* and *Mr. John M. Pipes,* with oral arguments by *Mr. John M. Pipes.* and *Mr. George A. Pipes.*

For respondent there was a brief with oral arguments by *Mr. A. E. Clark* and *Mr. R. E. Dennison.*

Department 1.  MR. JUSTICE RAMSEY delivered the opinion of the court.

On October 8, 1912, the plaintiff commenced this suit for an accounting. The complaint alleges, in substance, that on or about September 1, 1908, the plaintiff and the defendant jointly purchased a farm in Lane County, containing 720 acres of land, and, also, certain personal property thereon, for the sum of $14,400. The deed of conveyance of said land was made to the plaintiff and the defendant in the ordinary form. There was a mortgage on the farm at the time that they purchased it for $8,000, and they, as a part of the consideration for said property, assumed the payment of said mortgage, and they paid the balance of the purchase price of said property, amounting to $6,400. The plaintiff paid $100 of said balance of $6,400, and the defendant paid $5,877.50 thereof, and the evidence fails to show which of the parties paid the remainder of the $6,400. It was the agreement between the plaintiff and the defendant that each of them should pay one half of the purchase price of said premises, and that each

70 Or.—25

should own an undivided half thereof, and that the plaintiff should reimburse the defendant for all sums that the latter should pay for said property in excess of his half of the purchase price thereof. The complaint alleges also, in substance, that, at the time of the purchase of said farm, it was agreed between the plaintiff and the defendant, in consideration of the advance of $3,200 on the first payment by the defendant for the benefit of the plaintiff, that the plaintiff and his family should go into possession of said farm and operate, cultivate, and improve the same, and that the plaintiff and his family should have a living from said farm and the proceeds therefrom, and that the profits over and above that should be divided equally between the plaintiff and the defendant; that the plaintiff and his family went into possession of said farm and operated, cultivated and improved the same with prudence and industry, and that the plaintiff took therefrom such a living for himself and family as was reasonably necessary and no more.

The complaint alleges, also, that the plaintiff made large profits on said farm over and above the living for himself and family, and that the plaintiff spent said profits in improving said farm and the buildings thereon, and in increasing and improving machinery and implements and other property, all with the consent and by the express direction of the defendant, so that the value of the improvements so made by the plaintiff, together with the value of the stock and other property placed upon said farm by the plaintiff, exceeded the sum of $6,000. The complaint alleges, also, that during the four years that the plaintiff occupied said farm, the land naturally increased in value to a great extent, so that on September 1, 1912, the said farm and the personal property thereon were reason-

ably worth the sum of $34,800; that in addition to the earnings of said farm there was, also, invested in the said improvements and stock, and for taxes the sum of $1,141.69 by the plaintiff, and $901 by the defendant; that the defendant paid the interest on said $8,000, for four years, amounting to $1,600. The complaint alleges, also, that on September 1, 1912, the plaintiff owed the defendant for his one half interest in said farm and the personal property thereon, the following sums, to wit: $3,200; one half of the said sum of $1,600, paid as interest as aforesaid, with interest thereon at the rate of 6 per cent for two years, or $872; one half of $270, with interest thereon for four years at 6 per cent per annum, or $167—said sum of $270 having been expended by the defendant in locating and negotiating for the purchase of said farm, making a total of $4,239.40, from which should be deducted $115.50, being the excess of cash invested by the plaintiff after the purchase of the said farm, which would leave a balance of $4,123.90 due from the plaintiff to the defendant for the plaintiff's interest in said farm and personal property. The complaint alleges, also, that on or about September 1, 1912, the defendant represented to the plaintiff that they could trade said farm and the personal property thereon to one Ellis for a certain lot in Portland, Oregon, on which there was a brick building, and which is referred to hereafter as the Portland real estate; that the defendant represented to the plaintiff that the Portland real estate was producing an income of $500 per month and was worth $55,000; and that they could trade said farm for the same by paying $13,000 in addition, and assuming a mortgage on the Portland real estate for $14,000, and the defendant represented to the plaintiff that, in case the said trade should be consummated, the plaintiff would have

the same interest in the said Portland real estate that he had in the said farm and personal property thereon; that the plaintiff, relying upon said representations of the defendant, was induced thereby to convey and did convey unto the said Ellis all of his said interest in said farm and personal property. The complaint alleges, also, that in consideration of the said transfer of the said farm and personal property as aforesaid, the defendant procured a deed from the said Ellis conveying to the defendant said Portland real estate; that the defendant fraudulently caused said deed to be executed so as to omit, the name of the plaintiff as a grantee of said premises, but took the said real estate in his own name, and holds the same under said deed, and claims to be the absolute and exclusive owner thereof; and that the plaintiff has no interest whatever in the same. The complaint alleges, also, that the defendant has refused to account to the plaintiff or to pay him anything whatever for his said interest in said farm and personal property, and denies that the plaintiff has or had any interest in said farm, or any claim against him, either in law, or in equity, on account of the matters hereinbefore alleged. The complaint alleges, also, that plaintiff hereby waives any claim that he may have in the said Portland real estate, and elects to charge and hold the defendant liable for the value of his said interest in said farm and personal property, less the amount due the defendant as aforesaid. The complaint prays for an accounting and for a decree for $9,276.10.

The answer sets up affirmatively the defendant's version of the facts and denies every allegation of the complaint inconsistent therewith. The reply denies the allegations of the answer. The court below entered a decree finding that there was due the defendant for

money expended in the transactions referred to in the pleading, including interest to May 20, 1913, $26,835.61, and that there is due the plaintiff for money expended in said transactions, including interest, the sum of $1,328, and decreeing the sale of the said Portland property, etc.    The plaintiff appeals.

1. The evidence shows that the parties to this suit are brothers, and that the defendant is in good financial condition; that he is younger than the plaintiff and was unmarried at the commencement of the transactions mentioned in the complaint.    The plaintiff has a wife and eight children, and possesses little property. The relations between the plaintiff and the defendant were very friendly until a short time before this suit was brought.    The cause of their estrangement is not fully shown by the evidence.    It is shown, however, that they ceased to be friends about the time that they sold the farm and personal property, or a short time prior thereto.    The defendant entered into the business transactions mentioned in the pleading for the purpose of assisting the plaintiff and bettering his financial condition.    Prior to September 1, 1908, the plaintiff and his family resided in California.    About that date, the plaintiff and his family came to this state, at the request of the defendant, for the purpose of purchasing a farm and bettering his financial condition.    After looking around for some time, he found a 720-acre farm about nine miles southwest of Eugene that suited him.    The defendant looked at this farm, and he and the plaintiff purchased it, and the farm was deeded to them.    The purchase price of the farm and certain personal property that went with it was $14,400.    There was a mortgage upon it, and they, by the deed of conveyance, expressly assumed the payment of said mortgage as a part of the $14,400, to be

paid by them. The amount of the mortgage was $8,000, and it was not due. The amount to be paid in excess of the mortgage was $6,400. Six thousand dollars of this amount was paid at the date of the purchase. The plaintiff paid $100, and the defendant paid $5,877.50 according to the evidence. The evidence fails to show who paid the additional $22.50 necessary to make the $6,000 paid at the time of the purchase. The other $400, and interest thereon, were paid subsequently, by the defendant. It was the agreement between the parties that they were to own the farm equally, and that the plaintiff should repay to the defendant all that the latter paid in excess of his half of the purchase price thereof. It was agreed between the parties that the plaintiff and his family should reside on the farm and cultivate, and improve and manage it, and that the plaintiff should have a living for himself and family out of the products of the farm, and that the remainder of the net proceeds should be expended in improving and stocking the farm. According to the contract, the plaintiff and his family resided upon, cultivated and improved said premises from September, 1908, until September, 1912, a period of about four years.

The plaintiff, his wife, and four of his children did farm work on the premises during said period. A young girl shocked the grain after the binder, and the wife did various sorts of work, including cutting wood and hauling it from the timber. The evidence shows that the plaintiff and his family worked hard and lived frugally during the four years that they lived on the farm. The plaintiff's wife testified that she did not have a pair of new shoes during the time that they were on the premises. The trial judge remarked that they worked hard, but that he could not see that they

were anywhere on the pay rolls. The defendant visited the farm frequently and made directions as to improvements and stocking up of the farm, and furnished money to be expended therein.

A large amount of improvements were made on the premises by the plaintiff, and most of the money used in doing so was furnished by the defendant, and it is shown by the evidence that the plaintiff and his wife and four of their children worked hard and faithfully in improving and carrying on the farm. The products of the farm, less a scant living for the plaintiff's family, were spent in betterments. As nearly as we can ascertain from the evidence, the plaintiff spent of his own funds that he realized from the property which he had in California, as much as $1,200, in improvements on the farm. We find that the amount invested by the defendant in the farm, and in stocking and improving it, including money loaned the plaintiff and other items admitted by the plaintiff, was about $10,-713.25. The improvements made on the farm during the four years that the parties owned it were substantial and valuable, and the amount of personal property on the place and sold with it was much greater than the amount upon it when they purchased it. There was a considerable natural increase in the value of the land between September, 1908, and September, 1912, when the land was sold, as stated *infra*.

Both parties wanted to sell the farm and the personal property in 1912. They asked $40 per acre for it. The defendant made a contract to exchange the farm and the personal property upon it for an apartment house in Portland. The apartment house was encumbered with a mortgage of $14,000 and the owner required the payment of $13,000 in cash, and the assumption of said mortgage for $14,000, and he was

willing to assume the payment of the $8,000 mortgage on the farm. , The parties agreed upon the making of said exchange, and the plaintiff and the defendant joined in conveying said farm and the personal property to Ellis, the owner of the said apartment house, and said Ellis, at the request of the defendant, conveyed said apartment house to the defendant as sole grantee, and the latter paid said Ellis said sum of $13,000 in cash and assumed the payment of said mortgage of $14,000 on said apartment house. The plaintiff and his family surrendered the possession of said farm and personal property to said Ellis. The plaintiff testifies that, when he agreed to the exchange of the properties, the defendant told him to go to Portland and agreed that he would then have a settlement with the plaintiff concerning the said business.

Mrs. Bettencourt, wife of the plaintiff, testifies that the defendant told her that the plaintiff and she would get $7,000 or $8,000 in cash out of the business; that they would not have any interest in the building that he was trading for in Portland; and that they were to get cash for their interest in the business: Ev., p. 86.

The plaintiff testifies that when he went to Portland to have a settlement with the defendant, according to the contract, the defendant at first told him that he had nothing to settle with him. He says that the defendant, later, figured up the business and said that there was, after taking out all that was going to the defendant, $12,300 to divide between the plaintiff and the defendant, or $6,150 due the plaintiff: Ev., p. 15. He testifies also, that the defendant said that he would not pay him anything until he should sell the building, and that, when he should sell it, he would take his money out, and, if there is anything left, he would

divide with him. The defendant gives his version of the matter as follows:

"I made the deal. He undertood the whole thing. I told him about the deal. I says, 'Here, Anton,' I says, 'you know you got in on this ranch; you never gave me a scratch of pen security on this money; you never put in a dollar in here. Now, I am putting in a lot of money on this building. You understand the situation. I am going to take these papers made out to me, but any time I will give you agreements, written agreements, any time you pay your share of the money, or if you add the profits of this building added to the principal, and any time that money is paid you will get your undivided half interest on the building, or one-quarter undivided of the building any time you want it; I will give you your name on the deed as soon as you pay a part of your proportion, your share of the money.' "

We conclude from the evidence that in order to prevail on the plaintiff and his wife to execute the deed of the farm to Ellis, the defendant agreed that, when the exchange should be made, the plaintiff should go to Portland, and that he would settle with the plaintiff and pay him what he should be entitled to receive in equity and good conscience on account of his investment in and work upon the 720-acre farm, and the personal property that was conveyed to Ellis.

2. It is shown by the evidence that the plaintiff and his family worked faithfully and lived frugally during the four years that they resided on the farm, and that valuable permanent improvements were made on the premises. The plaintiff left on the farm a considerable amount of personal property that was sold with the farm. Among the things thus left and sold were the following: 60 head of cattle; 45 head of goats; 34 head of hogs; 8 head of horses; 50 turkeys; a lot of chickens; more than 1,000 bushels of grain; 80

tons of hay. Among the improvements made on the place were the following: A cow barn, 56x80 feet, costing $700; a milk house and creamery, costing about $300; a horse barn was torn down and a new roof, sides, floor, and timbers put in; a slaughter-house costing $50 or $60; the horse barn cost $250 or $260; plumbing was put in the dwelling-house, and a bath-tub and stationary wash-tubs, hot and cold water, and lavatories upstairs and downstairs were put in; the spring was cemented, and the water piped to the house and a large cement tank was put in; and three miles of 6-wire fence was built.

The plaintiff gave a list of personal property that was on the place when it was sold to Ellis, and testified that said property, after deducting therefrom the value of the personal property on the place when they bought it, was worth, in his judgment, $6,180. We believe that his evidence on that point was not seriously controverted by other evidence. That property was sold with the land. It was stated in the evidence that the improvements made on the place cost $2,000 and that the personal property was worth more than $6,000. The farm and the personal property were valued in the exchange for the Portland property at about $28,800, or $40 per acre. We think that the farm and personal property were worth $25,513.25. We think, also, that the labor of the plaintiff and his family was worth a great deal more than the living that they received from the place, and that this labor should be allowed as a complete offset to any claim of the defendant for interest on money loaned or advanced. We find that the farm and personal property sold were worth at the date of the sale $25,513.25, and that it was subject to a mortgage of $8,000, which the grantee assumed; the value of said property above said mort-

gage being $17,513.25. In the exchange of the property as stated *supra,* the defendant received the benefit of the whole of said $17,513.25.

We find that the plaintiff invested in said farm and personal property in his individual money $1,200, and that the defendant loaned the plaintiff and invested in said land and personal property $10,713.25. This includes $600 loaned or given to the plaintiff in California, in 1904, and the $300 loaned to him in 1908, $31.75 paid for examining an abstract, $175 that he paid to settle a trade for Vancouver property, and $500 that he paid for negotiating the exchange of the farm. These items are practically admitted by the plaintiff. Deducting the said sum of $1,200 invested by the plaintiff and the $10,713.25 loaned and invested by the defendant from the $17,513.25 received by the defendant by said exchange of property, we have remaining a balance of $5,600, to be divided equally between the plaintiff and the defendant. This entitles each to $2,800 in addition to what he invested. This added to the $1,200, which the plaintiff put in the business in money, entitles him to receive from the defendant, in all, $4,000. There has been much said as to the value of the farm and the personal property, but we have taken a reasonably conservative view of the matter. Witnesses usually differ on questions of value.

3–5. Paragraph 10 of the complaint is as follows:

"That plaintiff hereby waives any claim he may have in said Portland real estate (the apartment house), and elects to charge and hold defendant liable for the value of his said interest in said farm and personal property, less the amount due the defendant as aforesaid."

The plaintiff having waived any right to pursue his equity into the Portland real property which was

deeded to the defendant alone, a question arises as to the form of decree that should be granted. Discussing a similar question in the case of *Oliver* v. *Piatt,* 3 How. 400 (11 L. Ed. 622), Mr. Justice STORY says:

"And if a trustee has invested the trust property, or its proceeds, in any other property into which it can be distinctly traced, the *cestui que trust* has his election either to follow the same into the new investment, or to hold the trustee personally liable for the breach of the trust. This right or option of the *cestui que trust* is one which positively and exclusively belongs to him, and it is not in the power of the trustee to deprive him of it by any subsequent repurchase," etc.

In *Lathrop* v. *Bampton,* 31 Cal. 23 (89 Am. Dec. 141), the court says:

"Where a trustee, in violation of his trust, invests the trust property or its proceeds in other property, the *cestui que trust* may elect to hold * * the trustee personally liable to him for the breach of the trust. The former he can do, however, only when he can follow and identify the property either in its original or substituted form, as we have already seen. If this cannot be done, the right of the *cestui que trust* to elect is gone, because its exercise has become impossible, and he is therefore, forced to rely upon the personal liability of the trustee."

In *Libby* v. *Frost,* 98 Me. 291 (56 Atl. 907), the court says:

"If she had a *cestui que trust* interest in the Lancy lot, when it was exchanged for the Walker lot, she had the option to charge the Lancy lot or the Walker lot with the trust. She elected to look to the Walker lot, of the value of about $2,000, and thereby waived and released her claim on the Lancy lot. Having made her election, with full knowledge of the facts, she is bound by it, and is estopped to assert a claim upon the Lancy lot."

2 Perry, Trusts (6 ed.), Section 843, says:

"If the trust property or its proceeds cannot be identified, the *cestui que trust* may proceed against the trustee as an ordinary creditor, and it is said that, if he elects to proceed against the trustee personally, he cannot, also, proceed against the trust fund."

In *Barker* v. *Barker,* 14 Wis. 146, the court says:

"If the trustee uses funds to buy real estate in his own name, the *cestui que trust* has an election either to hold him personally responsible for the money, or to follow it into the land and have that adjudged trust property. But he cannot do both. And electing the one remedy is a waiver of the other."

19 Cyc., pages 535, 536, says:

"It is necessary that the *cestui que trust* make an election between these remedies, as he cannot hold and enjoy the proceeds of the trust property and at the same time recover the property itself. And where he has made an election by pursuing one remedy with a full knowledge of the facts, he cannot afterward pursue the other remedy. Thus when he has elected to hold the trustee personally responsible for an improper investment, he cannot afterward follow the trust property with the investment; and, on the other hand, if he elects to pursue the trust property, he cannot afterward hold the trustee personally responsible."

15 Cyc., pages 262, 263, says:

"An election once made, with knowledge of the facts, between coexisting remedial rights, which are inconsistent, is irrevocable and conclusive, irrespective of intent, and constitutes an irrevocable bar to any action, suit or proceeding based upon a remedial right inconsistent with that asserted by the election, or to the maintenance of a defense founded on such inconsistent right."

When a trustee has violated the trust by purchasing property with trust funds and taking the title in his

own name, the *cestui que trust* has the right to elect either to proceed to fasten the trust upon the purchased property, or to proceed against the trustee personally. When with knowledge of the facts he thus makes an election, it is binding upon him, and it cannot be revoked. When a *cestui que trust,* with knowledge of the facts, elects to proceed against the trustee personally, he waives all right to have the trust impressed upon property purchased with trust funds, but conveyed to the trustee, and, under such conditions, a court has no right to decree that the property so purchased be sold to obtain funds to satisfy the amount due the beneficiary for the violation of the trust.

When the consideration paid for land proceeds from two persons jointly, and a conveyance of the property is taken in the name of one of the persons only from whom the consideration proceeds, a trust generally results in favor of the other person whose money or property was used in paying for the property purchased in proportion to the amount paid by him. In this case, the farm and personal property owned by the plaintiff and the defendant was exchanged for the Portland property, and the defendant caused the last-named property to be conveyed to himself alone, and a trust resulted in favor of the plaintiff unless there was an agreement express or implied, between him and the defendant, that he should have no interest in said property. But the plaintiff, by the paragraph of his complaint, cited *supra,* expressly waives all interest in the Portland property and elects to hold the defendant personally for the amount owing him for his interest in the farm and the personal property exchanged for the Portland property, and by this waiver and election the plaintiff ceased to have any interest in or lien upon said property. This court has no power to decree a

sale of said property. It belongs to the defendant free of any claim of the plaintiff.

We find that the plaintiff is entitled to a decree in his favor and against the defendant personally for the recovery from the latter of the sum of $4,000 in full settlement of the matters in issue in this suit. The decree of the court below is modified, and a decree will be entered by this court in favor of the plaintiff and against the defendant for said sum of $4,000, and costs and disbursements. The decree of the court below for the sale of said Portland property is set aside.                                      MODIFIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE BURNETT concur.

---

Motion to dismiss appeal denied April 14, 1914. Dismissed without costs, May 19, 1914.