## In re PILOT RADIO & TUBE CORPORATION.

### ECKHARDT et al. v. BALL et al.
#### No. 2894.

Circuit Court of Appeals, First Circuit.
June 14, 1934.

Frank H. Pardee, of Boston, Mass., for appellants.

Charles B. Rugg, of Boston, Mass., James H. Eaton, of Lawrence, Mass., and Ellsworth E. Clark and Ropes, Gray, Boyden & Perkins, all of Boston, Mass., for appellees.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This is an appeal from a decree of the District Court of Massachusetts under section 24 of the Bankruptcy Act (11 USCA § 47) and General Orders in Bankruptcy No. 36, as amended by order of the Supreme Court made April 17, 1933 (11 USCA § 53).

The appellants are trustees in bankruptcy of the Pilot Radio & Tube Corporation, which was adjudged a bankrupt June 1, 1933. The appellees were grantees or vendees named in a trust mortgage of personal property by the bankrupt under its corporate seal and under date of August 11, 1932, by which mortgage certain personal property of the bankrupt was conveyed to the appellees to hold in trust and conditioned upon the performance of all the duties required of the bankrupt by the terms of an agreement of even date with said conveyance, and in case of default the mortgagees were empowered under the terms of the mortgage to enter the premises of the mortgagor and take possession of the mortgaged chattels and sell the same at public auction, and out of the proceeds of such sale discharge the obligations of the mortgagor under the agreement and pay any balance to the mortgagor.

The agreement referred to in the instrument of conveyance stated the obligations of the bankrupt, which is therein referred to as the corporation, as follows:

"Whereas the corporation is now indebted to the Bay State National Bank of Lawrence, a corporation, duly organized and having its usual place of business in said Lawrence, on account of its notes held by said bank.

"And whereas it desires that said bank refrain from pressing it for immediate payment of said notes when the same next fall due,

"And whereas said bank is presently willing to refrain from making demand for payment of said notes when they next fall due and it is presently willing to extend the time for payment of the same by permitting the renewal of said notes, provided that said bank be given some added measure of collateral and protection;

"And whereas the corporation is desirous of obtaining a loan of fifty thousand dollars ($50,000) from the Essex Savings Bank, a banking corporation, having its usual place of business in said Lawrence;

"And whereas said Essex Savings Bank is willing to lend the corporation said sum of fifty thousand dollars ($50,000) provided that it shall receive the corporation's note in that sum, secured by a mortgage of all the corporation's real estate in said Lawrence (said mortgage to be subject to a prior mortgage on said real estate which was given by Lawrence Factories, Inc. to said Essex Savings Bank under date of January 3rd, 1930, * * *) and also provided that said Essex Savings Bank shall receive some added measure of collateral or protection;

"And whereas to these ends the said banks and the said corporation are agreed that a mortgage of all the corporation's tangible personal property situated in said Lawrence shall be executed as such added measure of collateral or protection;

"And whereas said banks and said corporation both desire that said mortgage shall run to private individuals as trustees for said banks, said Richard Ward, said J. Rodney Ball and said James H. Eaton have been selected to serve as said trustees and such chattel mortgage is being executed by the corporation to said trustees simultaneously with

the execution of this agreement, it is hereby mutually agreed as follows:

"Said Trustees shall hold said chattel mortgage for so long a period of time as said corporation shall continue to be indebted to the said Bay State National Bank, and for so long a time as said corporation shall continue to owe said Essex Savings Bank any part of the said fifty thousand dollar ($50,-000) loan this day made by said Essex Savings Bank to said corporation; but when said corporation shall cease to be indebted to the said Bay State National Bank and shall have paid off said fifty thousand dollar ($50,000) loan to said Essex Savings Bank and be entitled to a discharge of its mortgage of real estate which it has this day executed to said Essex Savings Bank, then the Trustees shall promptly execute and deliver to the corporation a discharge of said chattel mortgage. If said corporation shall, however, default on any payment of interest when due to either of said banks or if it shall fail to make any payment of principal on account of its obligation to either of said banks when either of said banks shall demand such principal payment, or if said corporation shall fail to perform any of the conditions mentioned in said chattel mortgage, then the Trustees shall be authorized to take such action as is permitted by said chattel mortgage, including the right to foreclose the same, and they shall thereafter divide the proceeds of such foreclosure sale between said banks in such proportion as the said two banks may then agree upon.

"And the corporation promises the Trustees that it will pay said banks as demanded all sums which it may owe said banks, that in the meantime it will promptly pay all interest charges thereon and will faithfully and punctually do and perform all of the terms, covenants and conditions contained in said real estate mortgage of even date and in said chattel mortgage to be done and performed by the mortgagor, that it will promptly pay to said Trustees whatever expenses said Trustees may be put to on account of these premises, together with a reasonable compensation for the service rendered by said Trustees."

The trust mortgage was recorded in the office of the city clerk of the city of Lawrence within fifteen days of its execution as required in section 1 of chapter 255 of the General Laws of Massachusetts (Ter. Ed.), but the agreement referred to therein and above set forth was not recorded with the mortgage.

Following the adjudication in bankruptcy, the bankruptcy court having ordered the trustees to sell at public auction all the tangible personal property of the bankrupt, the appellees filed a petition with the referee in bankruptcy to determine whether by their mortgage of said chattels they had a lien on the proceeds of the sale of said chattels by the trustees in bankruptcy, the petitioners having entered into a stipulation with the trustees in bankruptcy that whatever lien the appellees had on the personal property of the bankrupt by virtue of the trust mortgage above referred to should attach to the funds received from the public sale of the same.

Upon a hearing before the referee, the referee held: First, there was no consideration given by the mortgagee to the mortgagor for the mortgage; second, that the Essex Savings Bank did advance $50,000, and that the mortgage given to the appellees as trustees was given as additional security for the loan by the Essex Savings Bank, but that no consideration was given for the mortgage by the Bay State National Bank and no trust relationship existed between the Bay State National Bank and the mortgagees; and, third, that the mortgage was not recorded as required by chapter 255, § 1, of the General Laws of Massachusetts and was therefore void as to the trustees in bankruptcy.

The District Court, however, upon the report of the referee setting forth the above facts, reversed the order of the referee and held that the mortgage to the appellees being under seal, it was not open to the trustees in bankruptcy to raise the issue of lack of consideration. In any event, the trustees named in the mortgage assumed certain obligations that were not only for the benefit of the cestuis, but for the benefit of the bankrupt. We think the referee erred in holding that the conveyance was without consideration. Kaplan v. Suher, 254 Mass. 180, 150 N. E. 9, 42 A. L. R. 1142; Rogers v. Abbott et al., 128 Mass. 102.

It is also urged that the banks were not parties to the agreement and that it does not appear that they had any knowledge that the conveyance was made for their benefit. If that knowledge was essential to the validity of the conveyance in trust for their benefit, the inference is strong that they were aware of what was being done and that it had their approval. The Essex Savings Bank advanced the sum of $50,000 as set forth in the agreement, and it does not appear that the Bay State National Bank took any steps to enforce its notes, though they were past due.

It is not essential, however, where there is a conveyance of property to a third person as trustee that the beneficiary should be notified of the fact and assent thereto, as

the validity of the trust depends upon the intention of the creator and an apt declaration of trust; Brabrook v. Boston Five Cents Savings Bank, 104 Mass. 228, 6 Am. Rep. 222; Kendrick v. Ray, 173 Mass. 305, 53 N. E. 823, 73 Am. St. Rep. 289; or that there be any consideration moving from the trustee to the cestui. The assent of a cestui is presumed, until renounced, if the trust be for his benefit. Libby v. Frost et al., 98 Me. 288, 56 A. 906; Devol v. Dye, 123 Ind. 321, 24 N. E. 246, 7 L. R. A. 439. It is urged that this was not a trust mortgage because the vendees or grantees were not described as trustees in the granting clause; but there is no merit in this contention since the habendum clause expressly provides that the goods and chattels are to be held by the vendees in trust.

■ We are of the opinion that the trust mortgage as between the parties and cestuis que trustent was a valid instrument, and the beneficiaries of the trust were entitled to have it enforced according to its terms and those of the agreement therein referred to. The only other issue in the case is whether the conveyance was recorded in such manner as to render it effective as against third parties or a trustee in bankruptcy.

The ground on which it is urged there was not a proper record of the conveyance under section 1 of chapter 255, G. L. Mass. (Ter. Ed.) is that the agreement it was given to enforce was not recorded with the deed of conveyance.

Section 1 of chapter 198, R. L. Mass. (1902), provided that:

"Mortgages of personal property shall, within fifteen days from the date written in the mortgage, be recorded on the records of the city or town in which the mortgagor resides when the mortgage is made, and on the records of the city or town in which he then principally transacts his business or follows his trade or calling. If the mortgagor resides out of the commonwealth, and the property mortgaged is within the commonwealth when the mortgage is made, the mortgage shall be recorded on the records of the city or town in which the property then is. If a record in two different places is required and the mortgage is recorded in one within said fifteen days, it may be recorded in the other within ten days after the date of the first record. Unless the property mortgaged has been delivered to and retained by the mortgagee, the mortgage shall not be valid against a person other than the parties thereto until it has been so recorded; and a record made subsequently to the time limited shall be void.

By chapter 656 of the Acts of 1913 it was provided that:

"Section 1. The provisions of chapter one hundred and ninety-eight of the Revised Laws and acts in addition thereto and in amendment thereof relating to mortgages of personal property, shall apply to bills of sale intended for security. If the condition for redemption is in writing, it shall be recorded with and as part of such bill of sale. If the condition for redemption is oral, a written statement thereof by the mortgagee shall so be recorded."

In the revision of the General Laws of Massachusetts of 1921, the amendment of 1913 with appropriate changes was added to section 1 of chapter 255 and is now found in section 1, c. 255, G. L. (Ter. Ed.).

■ It is urged that because the word "mortgagee" was used in the amendment of 1913 and now appears in section 1 of chapter 255, G. L., in connection with the recording of a bill of sale intended as security, the provision for recording a written or oral condition also applies to mortgages of personal property, the recording of which was fully covered by the original section; but we think there is no merit in this contention. While the rights of the parties are determined by the laws of Massachusetts, In re Sachs (C. C. A.) 30 F. (2d) 510, the Supreme Court of Massachusetts has not, so far as we are advised, held that the amendment of 1913 applies to the recording of an ordinary mortgage of personal property.

It is said that the Massachusetts court has held that bills of sale are not mortgages, citing Coggan v. Ward et al., 215 Mass. 13, 102 N. E. 336; Williams v. Nichols, 121 Mass. 435; and therefore the term "mortgagee" found in the amendment must refer to a mortgagee in a chattel mortgage; but an examination of these cases will disclose that what the court held was that bills of sale at the time these cases were decided were not mortgages within the meaning of the recording act. The court in Coggan v. Ward et al., at page 17 of 215 Mass., 102 N. E. 336, 338, expressly held that "the bill of sale with its accompanying oral agreement constituted a mortgage of personal property valid under the laws of this commonwealth, but not required to be or capable of being registered or recorded as such." Also see Clark, Trustee, v. Williams et al., 190 Mass. 219, 76 N. E. 723.

A bill of sale, therefore, when given as security, becomes a mortgage and the term "mortgagee" was properly used in the Act of

1913 as referring to the vendee or grantee in such a bill of sale.

The history of the legislation, we think, affords no basis for the contention of the appellants. Prior to the Act of 1913, c. 656, a bill of sale given as security was not required to be recorded; but mortgages of personal property had always required a record in order to be valid as to third parties.

The Act of 1913, c. 656, while at the time of its introduction in the Legislature was entitled "An Act Relating to the Recording of Mortgages of Personal Property," no doubt because it was an amendment of the section of the Revised Laws of 1902 relating to that subject, before it was finally enacted, however, the inappropriateness of this title was observed and the act when passed was entitled "An Act relative to the recording of bills of sale of personal property intended as security."

It is obvious, therefore, we think, that the Legislature, when it passed this act, did not intend thereby in any way to modify the statute relating to the recording of mortgages of personal property, that is, conveyances of personal property in the usual form of a mortgage with a conditional and defeasance clause expressed therein, which was a notice, when recorded, to all the world that it was not an absolute conveyance.

The Legislature by the amendment of 1913 merely provided that the law relating to the recording of mortgages of personal property, so far as time and place are concerned, should apply to bills of sale when intended as security and that any written or oral agreement showing that it was intended as security only should be recorded with it in order to give notice to the world that the instrument, while absolute on its face, was intended merely as a mortgage. It did not purport to change the law applying to mortgages, as it previously stood, which contained a condition and defeasance clause, and which gave notice to the world that it was not an absolute conveyance.

A bill of sale prior to the amendment of 1913, even when intended as security, could not properly be recorded as a chattel mortgage, Coggan v. Ward et al., supra, and was of no protection to the grantee as against third parties, unless the chattels were delivered to the grantee, in which case it might prove a convenient means of defrauding creditors. The obvious purpose of the 1913 amendment was to give a bill of sale, intended as a mortgage, the same standing as the ordinary personal property mortgage, provided the conditions on which the property was conveyed were also spread on the records.

Therefore, unless this recording statute of Massachusetts prior to 1913 required the recording in full of the agreement in this case, there is nothing in the amendment of 1913 requiring it. Parol evidence is always admissible in case of chattel mortgages to identify such an agreement and the intent of the parties. The deed of conveyance in this case gave ample evidence of its nature and the source of information as to the conditions to be performed by the mortgagor.

It has never been considered necessary in Massachusetts to record fully the terms of promissory notes or an agreement in case of a mortgage to secure future advances; nor is it considered necessary to record a collateral agreement referred to in the mortgage. Hellyer v. Briggs, 55 Iowa, 185, 7 N. W. 490; Byram v. Gordon, 11 Mich. 531; Jones on Chattel Mortgages and Conditional Sales (Bowers Ed.) vol. 1, §§ 79–96; Barnard v. Moore et al., 8 Allen (Mass.) 273; Wood v. Weimar, 104 U. S. 786, 26 L. Ed. 779; Henshaw et al. v. Sumner, 23 Pick. (Mass.) 446, 453; Shay v. Gagne, 275 Mass. 386, 176 N. E. 200.

The decree of the District Court is affirmed with costs to the appellees.